**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave. NW, Rm. 7243
Washington, DC 20530

Tel: (202) 514-8280

July 17, 2026

VIA CM/ECF

Patricia S. Dodszuweit
Clerk, United States Court of Appeals
for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

RE: *Celebrity of Springfield LLC v. SBA*, No. 25-2026 (3d Cir.) (oral argument scheduled for September 17, 2026)

Dear Ms. Dodszuweit:

We are writing to call the Court's attention to the Seventh Circuit's recent decision in *Oak Lawn Respiratory & Rehabilitation Center, LLC v. SBA*, __ F.4th __, No. 25-1346 (7th Cir.), which concerned the validity and application of the Corporate Group Rule at issue here.

It is undisputed that the plaintiff LLC in this appeal violated that rule when it self-certified, received, and then did not return a $2 million, low-interest loan. Plaintiff, however, contends that when it applied for loan forgiveness, SBA had to forgive a portion of that loan based on the theory that plaintiff could properly have received a smaller loan. Plaintiff urges, among other things, that while the governing statute "is silent" (Opening Br. 10-12), "does not speak to" the issue (*id.* at 11-12), and "says nothing about how SBA is to proceed" (*id.* at 12), the Court should nonetheless impose that mandate as following from the statute's "fundamental purpose" (*id.* at 13-15). *See also* Reply Br. 2-5 (urging that the statute is "ambiguous" and that the Court should "give no deference to SBA's decision" and "exercise its independent

judgment") (quotation marks omitted); *id.* at 10 (calling this the "best reading of the statute") (quotation marks omitted).

The Seventh Circuit's recent decision in *Oak Lawn* not only upheld the validity of SBA's aggregate cap on loans (which plaintiff does not challenge here), but—contrary to plaintiff's fundamental submission in this case—it also emphasized that the statutory scheme "gives the SBA a good deal of administrative discretion." Slip. op. 3-4. The decision also made clear that individual loan forgiveness decisions are reviewed deferentially. *See id.* at 6 (asking whether "substantial evidence supports [SBA's] decision"). And while the Corporate Group Rule did, in fact, address the very loan forgiveness question presented here (U.S. Br. 50-51, 52), the Seventh Circuit in *Oak Lawn* also noted that SBA could "resolve the most pressing questions first" when it promulgated that rule (particularly when "scrambl[ing] to make policy in the early months of the COVID pandemic") and address other issues later. *See* Slip op. 6-7.

Sincerely,

BRETT A. SHUMATE
*Assistant Attorney General*

RUSS FERGUSON
*United States Attorney*

MICHAEL S. RAAB
*/s/ Adam Jed*
ADAM C. JED
*Attorneys, Appellate Staff*
*Civil Division, Room 7243*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8280*
*adam.c.jed@usdoj.gov*

cc: Counsel of Record (via CM/ECF)

In the
# United States Court of Appeals
For the Seventh Circuit

---

Nos. 25-1346, 25-1347 & 25-1348

OAK LAWN RESPIRATORY AND REHABILITATION CENTER, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*,

*Defendants-Appellees*.

---

Appeals from the United States District Court for the Northern District of Illinois, Eastern Division.
Nos. 23 CV 4363, 23 CV 4367 & 24 CV 1490 — **Georgia N. Alexakis**, *Judge*.

---

ARGUED DECEMBER 12, 2025 — DECIDED JULY 14, 2026

---

Before EASTERBROOK, JACKSON-AKIWUMI, and LEE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Oak Lawn is one of 203 nursing homes under common control. Many of them applied for loans under the Coronavirus Aid, Relief, and Economic Security Act (CARES), Pub. L. 116-136, 134 Stat. 281 (2020). The relief program not only entitled some businesses to loans (guaranteed by the federal government) under the statute's

Paycheck Protection Program (PPP) but also authorized the Small Business Administration (SBA) to forgive some or all of the principal amounts, turning loans into grants. We refer throughout to Oak Lawn; two other nursing homes are plaintiffs but need not be discussed separately. We also omit details about several statutes that modify the original version of the CARES Act.

The aggregate demand for paycheck-protection loans exceeded the appropriated funds. This led the SBA to adopt some conservation devices, one of which it calls the Corporate Group Rule. Versions of the Rule appear in different places, but the one relevant to our case can be found at 85 Fed. Reg. 26,324 (May 4, 2020). The CARES Act sets a limit of $10 million in guaranteed loans for any one business, and the Rule adds a $20 million cap for loans to all businesses in a single corporate group. It contains a straightforward explanation: "limiting the amount of PPP loans that a single corporate group may receive will promote the availability of PPP loans to the largest possible number of borrowers". It defines as one "corporate group" any affiliated businesses that "are majority owned, directly or indirectly, by a common parent."

By the time Oak Lawn sought a loan, other businesses under common control with it had received more than $20 million. The bank to which Oak Lawn applied was unaware of this, however, and disbursed almost $1 million. Collectively, 61 businesses out of these 203 received more than $41 million in paycheck-protection loans. When in 2021 they sought forgiveness of these loans, the SBA limited that benefit to $20 million, leaving them in debt to the lending banks for the rest. The nursing homes complained, but administrative judges ruled against them. E.g., *Forest View Rehabilitation and Nursing Center, LLC*, No. PPP-6431697306 (SBA Office of Hearings & Appeals Oct. 16, 2023). This suit followed. The district court

granted summary judgment in the agency's favor. 2024 U.S. Dist. LEXIS 234023 (N.D. Ill. Dec. 30, 2024).

The CARES Act routes paycheck-protection loans through §7(a) of an older statute, codified at 15 U.S.C. §636(a). This sets up Oak Lawn's principal argument: that the Corporate Group Rule is invalid because §7(a) applies "to any qualified small business concern". Each of the 203 nursing homes is a limited liability company and therefore must be treated separately, the argument runs. What's more, §636(a)(36)(D) says that "any" qualified small business "shall" be eligible for guarantees if statutory conditions have been met.

Yet the Corporate Group Rule does not declare any LLC or corporation to be ineligible for a loan guarantee. The question at hand is how much of a loan the federal government will guarantee, not whether any given firm is eligible for benefits. Section 7(a) does not require the agency to issue guarantees for any particular loans or potential borrowers. It empowers the agency to do certain things, with specified restrictions, but does not ensure that every applicant receives a guarantee. Likewise the CARES Act says that the agency "may" guarantee loans up to specified amounts, 15 U.S.C. §636(a)(36)(B), not that it must guarantee the maximum lawful amount for every applicant.

Congress gave the agency emergency rulemaking authority to be used during 2020. 15 U.S.C. §9012. This statute provides the foundation for the Corporate Group Rule. As Oak Lawn observes, the language of §7(a) does not authorize the agency to set aggregate limits. Granted. But neither does §7(a) forbid it. Oak Lawn thinks that the CARES Act set up a race, so that whichever small businesses applied first had to receive the maximum possible guarantees, while businesses that applied a few days later—after appropriations had been ex-

hausted—would get nothing. It is not possible to see that legislative choice in the statute.

Section 7(a) in conjunction with the rulemaking power gives the SBA a good deal of administrative discretion. One way in which the agency used that discretion is to read "business concern" at the level of management or investment affiliation, a subject that had been addressed by regulation even before the pandemic. 13 C.F.R. §121.301(f). Neither §7(a) nor anything else in the statute defines a "business concern." Oak Lawn assumes that anything separately organized under state law must be an independent business concern. That's possible, but it is not something that the statutory language specifies.

Many federal agencies treat affiliated businesses as if they were one for regulatory purposes. See, e.g., *Esmark, Inc. v. NLRB*, 887 F.2d 739, 755–57 (7th Cir. 1989) (labor law); *McCleskey v. CWG Plastering, LLC*, 897 F.3d 899, 901–03 (7th Cir. 2018) (pension law); *Teed v. Thomas & Betts Power Solutions, L.L.C.*, 711 F.3d 763 (7th Cir. 2013) (Fair Labor Standards Act). Doubtless statutory language could require federal agencies to look exclusively to state law to identify a business concern—and in the absence of a regulation reliance on common law is the norm, see *United States v. Bestfoods*, 524 U.S. 51 (1998). But we have not found any generally applicable statute or decision saying that federal agencies are *forbidden* to adopt regulations that apply lending limits (or similar constraints) to corporate groups as a whole.

Consider an example that is familiar to lawyers. Many large law firms are partnerships of legal-service corporations. Each lawyer incorporates separately, and then the corporations form a partnership. This may have tax and insurance benefits. But we hope that no one would think that every part-

ner at Kirkland & Ellis (the world's largest law firm) could separately receive $10 million in loan forgiveness under the Paycheck Protection Program just because each individual lawyer's payroll is less than the limit established for each business by the CARES Act. It hardly seems a stretch to say that what is true for separately incorporated partners at a global law firm (whose income, payroll, and assets far exceed the maximum for a "small business") is true for separately organized nursing homes as well.

According to Oak Lawn, the SBA's Rule is arbitrary and capricious even if we deem it compatible with §7(a). Yet the agency gave a cogent reason: ensuring that the limited resources available to the program would go around. Oak Lawn does not contend that this is wrong and that the contested Rule led to unused funds being returned to the Treasury. The SBA asserts that by 2021 it had guaranteed almost 12 million paycheck-protection loans aggregating almost $800 billion; Oak Lawn does not deny this. No more need be said about this line of attack.

One can imagine problems arising if different investors hold different fractional interests. Imagine three business, A, B, and C, owned by investors X, Y, and Z. X owns two-thirds of A, and Y owns the rest; Y owns two-thirds of B, and Z owns the rest. Z owns two-thirds of C, and X owns the rest. Each of the three investors owns interests in only two of the three firms, and no combination of investors owns a majority interest in all firms. The three firms may be thought of as fraternal rather than under common ownership. Should they be treated as a single corporate group—and, if they are, how would the $20 million cap be allocated among them? The agency's regulation does not address that subject. But the omission is not surprising; the SBA and many other agencies scrambled to make policy in the early months of the COVID pandemic, and

they were entitled to resolve the most pressing questions first. The treatment of fractional ownership did not arise in spring 2020, and for all we can tell has not been a serious problem since then. Agencies need not resolve every possible problem on the way to addressing the most pressing problems, so this omission does not make the Corporate Group Rule arbitrary or irrational.

Oak Lawn offers two arguments about its particular situation: that it is not part of a corporate group and that the Policy has been applied to its loan retroactively. An administrative judge rejected both contentions, and substantial evidence supports that decision.

The agency, with the administrative judge's approval, concluded that Gubin Enterprises (100% owned by Moishe Gubin) and Michael Blisko formed a partnership that operates the 203 nursing homes. This partnership has an investment interest exceeding 55% in all 203 nursing homes and controls more than 50% of the voting membership interests of each limited liability company. Under the Corporate Group Rule, this makes the 203 nursing homes part of a single corporate group, because the Gubin-Blisko partnership can direct the conduct of every nursing home. (It is thus unlike our A, B, C example in which each business had a different majority controller.)

Oak Lawn insists that a corporate parent (or other controller) must be a single entity, such as a corporation or LLC, but does not explain why. Partnerships are entities under both statutes and the common law. To return to our example of Kirkland & Ellis: if that partnership contracts for space in an office building, it cannot escape its obligation by insisting that only natural persons or corporations can be liable. Likewise if Kirkland & Ellis bought majority interests in 203 Starbucks

franchises; the coffee shops could not obtain separate federal guarantees as if they were all small, independently owned businesses.

As for retroactivity: The administrative judge concluded that the loan to Oak Lawn was disbursed on May 18, 2020, several weeks after the group as a whole reached the statutory cap. Oak Lawn replies that, although its loan was *disbursed* by the bank on May 18, it had *applied* before May 4, the Rule's effective date, and been approved by the bank. Yet how does this make application of the Corporate Group Rule retroactive? Oak Lawn was free to withdraw its application, or decline to draw the funds, once the Rule appeared in the Federal Register. Indeed, the agency required it to notify the lender, before a draw, if the draw would put the group over the limit. 85 Fed. Reg. at 26,325.

That's not all. We do not see how the Rule can be said to work retroactively in this case. Repayment always post-dates a loan. Oak Lawn received almost $1 million and promised the bank that it would repay this money. The SBA guaranteed that obligation and has not revoked its assurance. How much of the loan would be *forgiven* lay in the future as of May 18, 2020. It's not as if Oak Lawn has been penalized for any steps irrevocably taken before May 4; it just hasn't received all of the subsidy it hoped for. Nothing in federal law entitles it to more.

Appellants' further arguments do not require discussion.

AFFIRMED